STATE v. WOODROW W. KING.

(Filed 2 June, 1965.)

**1. Criminal Law § 101—**

Evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction is sufficient to be submitted to the jury, but evidence which raises a mere suspicion or conjecture in regard to the issue is insufficient.

**2. Intoxicating Liquor § 13c—　Circumstantial evidence of defendant's constructive possession of intoxicating liquor held insufficient for jury.**

The evidence tended to show that defendant, a noted rabbit hunter, was observed with his hounds in a wooded area some 500 yards from his home, that he walked around and stopped and looked at several places, then walked to a paper bag at the foot of a cedar tree, straightened the bag and covered it with leaves, and had started away when he was apprehended by the officers, and that the officers found pints of taxpaid whiskey at the places at which defendant had looked and in the bag at the foot of the cedar tree. There was also evidence that there were other occupied houses nearer to the *locus* than defendant's house, and that the area was a honeysuckle thicket with paths going in every direction. *Held:* The evidence was insufficient to be submitted to the jury on the question of defendant's constructive possession of the whiskey.

APPEAL by defendant from *Braswell, J.,* 1 March 1965 Criminal Session of ALAMANCE.

Criminal prosecution on a warrant charging defendant on 21 November 1964 (1) with the unlawful possession of one gallon of taxpaid whisky, and (2) with the unlawful possession of one gallon of taxpaid whisky for the purpose of sale (see warrant in the record of *S. v. Welborn,* 249 N.C. 268, 106 S.E. 2d 204, on file in the clerk's office), heard *de novo* on appeal from a conviction on both counts and a judgment in the municipal recorder's court of the city of Graham.

Plea: Not guilty. At the close of the State's evidence, defendant moved for a judgment of compulsory nonsuit on both counts. The trial court allowed the motion on the count charging the unlawful possession of one gallon of taxpaid whisky for the purpose of sale, and denied the motion on the count charging the unlawful possession of one gallon of taxpaid whisky, and defendant excepted. Verdict: "Guilty of illegal possession of taxpaid whiskey."

From the judgment imposed, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General James F. Bullock for the State.*

*H. Clay Hemric for defendant appellant.*

PARKER, J.  Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit on the count in the warrant charging him with the unlawful possession of one gallon of taxpaid whisky. The State's evidence presents these facts:

About 3 p.m. on Saturday, 21 November 1964, J. C. Scoggins and A. B. Gross, officers employed by the Burlington-Graham Board of Alcoholic Control, found in a wooded and honeysuckle area of land off of Chase Street in the city of Burlington eight pints of Governor's Club taxpaid whisky in a paper bag sitting beside a cedar tree in a "honeysuckle thicket in the wooded area" near Snooper's Lake. The paper bag was not covered up, and was sitting beside the tree "in a crumbled position — like somebody sat it down right quick." There are paths in the honeysuckle area going in every direction. The two officers concealed themselves by lying down in a place twelve steps from the cedar tree where they could watch this whisky.

About 4:45 p.m. on the same afternoon, these two officers saw defendant, who lived at 202 Dixon Street about 500 yards from this wooded area, and who is "a renowned rabbit hunter," accompanied by eight beagle hounds, a bulldog, and a little dog, near the cedar tree walking in a heavily traveled path. He would walk four or five steps, stop and look around. When he came into the wooded area, he stopped and looked at an area where the officers later found eight pints of taxpaid whisky. He walked four or five more steps, stopped and looked at another area, where the officers later found another eight pints of taxpaid whisky. He walked four or five more steps and came to the paper bag containing eight pints of taxpaid whisky sitting beside the cedar tree. He bent over, squatted down, straightened up the paper bag, covered it over with leaves, and started away. When he did, the officers arrested him. The hunting season was open. All three gallons of taxpaid whisky were on land owned by M. C. Hayes. After arresting defendant, the two officers took possession of the gallon of whisky sitting beside the cedar tree, and found and took possession of two separate gallons of whisky in pint bottles in the areas where defendant had looked. The twenty-four pint bottles of whiskey indicated they had been purchased that day from three liquor stores situate in Graham and Burlington.

In and around the area where all the whisky was found, there are some eight or nine houses, a plumbing place of business, and a house trailer, and all, or nearly all, were occupied at the time. All these buildings, except three, were closer to the places where the officers found the whisky than defendant's home. In the area "near the honeysuckle patch" was a little house used by one Rainey Harris who was selling whisky. Defendant owned this house.

All twenty-four pints of taxpaid whisky found by the two officers were on land owned by M. C. Hayes. All of it was found about 500 yards from where defendant lived at 202 Dixon Street. Some five or six houses that were occupied at the time were situate closer to all this whisky than defendant's home. Certainly, the later finding of two bags containing eight pints of taxpaid whisky each by the two officers in two separate areas toward which areas defendant had merely looked is not sufficient to carry the case to the jury that defendant was in the unlawful possession of this whisky or any of it.

Eight pints of taxpaid whisky were sitting in a paper bag "in a crumbled position," and not covered up, beside a cedar tree in a "honeysuckle thicket in the wooded area" near Snooper's Lake on land owned by M. C. Hayes. There are paths in the honeysuckle area going in every direction. In the area "near the honeysuckle patch" was a little house used by Rainey Harris, who was selling whisky. Defendant owns this house. About 4:45 p.m. on Saturday, 21 November 1964, defendant, who is "a renowned rabbit hunter," accompanied by eight beagle hounds (a rabbit hunter's favorite hunting dog), a bulldog, and a little dog, was walking in this area near the cedar tree in a heavily traveled path. The hunting season was open. After stopping twice and looking at two areas where the two officers later found 16 pints of taxpaid whisky, he came to the cedar tree. He stopped, bent over, squatted down, straightened up the paper bag containing eight pints of taxpaid whisky beside the cedar tree, covered it over with leaves, started away, and was arrested by the officers, who were concealed twelve steps away, and whom, so far as the record discloses, defendant's pack of dogs never noticed. It seems clear that whoever was in possession of the eight pints of taxpaid whisky sitting in a paper bag by the cedar tree had it in his possession for the purpose of sale, but the trial judge dismissed the count in the warrant charging possession for the purpose of sale. The question for decision is: Is the State's evidence, considered in the light most favorable to it, sufficient to carry the case to the jury that defendant was in the actual or constructive possession of the eight pints of taxpaid whisky in a paper bag sitting beside the cedar tree in such sense that he could and did command its use or control? *S. v. Meyers*, 190 N.C. 239, 129 S.E. 600.

"It is sometimes difficult to distinguish between evidence sufficient to carry a case to the jury, and a mere scintilla, which only raises a suspicion or possibility of the fact in issue. [Citing authority.] The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury."

*S. v. Johnson*, 199 N.C. 429, 154 S.E. 730. The State's evidence does no more than raise a suspicion or conjecture, very strong perhaps, of defendant's guilt. If the officers had waited and watched longer, they might or might not have obtained indubitable proof of defendant's guilt. Hence, under the principles announced in *S. v. Johnson, supra; S. v. Love*, 236 N.C. 344, 72 S.E. 2d 737; *S. v. Wiley*, 242 N.C. 114, 86 S.E. 2d 913; *S. v. Glenn*, 251 N.C. 156, 110 S.E. 2d 791; *S. v. Guffey*, 252 N.C. 60, 112 S.E. 2d 734; *S. v. Hunt*, 253 N.C. 811, 117 S.E. 2d 752; *S. v. Carver*, 259 N.C. 229, 130 S.E. 2d 285, the court erred in overruling defendant's motion for judgment of compulsory nonsuit on the count in the warrant charging the unlawful possession of taxpaid whisky.

Reversed.